OPINION OF THE COURT
Oscar Murov, J.
Pilgrim Psychiatric Center applies, pursuant to section 9.33 of the Mental Hygiene Law, to this court to retain the above-named patient for involuntary care and treatment at said hospital for a period not to exceed 60 days. It alleges that said patient has been carefully observed and examined, is in need of retention, and is either unsuitable or unwilling to remain in said hospital voluntarily.
The patient is a single male who formerly resided with his friend in Long Beach, New York. He is approximately 29 years of age, is a high school graduate, and was last employed in the capacity of a messenger several years ago. On January 2, 1980, an investigation was conducted at the property office and at the resource and reimbursement office located at Pilgrim Psychiatric Center. Said investigation revealed that while the patient did not have any funds deposited at the hospital, he does receive Social Security benefits in the amount of $245 per month and that were he discharged from the hospital, he would also be entitled to Supplemental Security Income benefits in the amount of $45 per month. He was admitted to the above facility after submitting himself voluntarily to Long Beach Hospital because, he alleged, he was hearing voices telling him to kill himself. Shortly thereafter, he requested his release, but was notified by the hospital that an order of retention for a period not to exceed 60 days would be requested. Thereafter, the patient requested that a court hearing be held to determine the need for his involuntary care and treatment.
By way of background, subdivision (a) of section 9.13 of the Mental Hygiene Law provides that the director of any hospital *869 may receive as a voluntary patient any suitable need of care and treatment, who voluntarily makes written application therefor. Subdivision (b) thereof provides as follows: "If such voluntary patient gives notice in writing to the director of the patient’s desire to leave the hospital, the director shall promptly release the patient; provided, however, that if there are reasonable grounds for belief that the patient may be in need of involuntary care and treatment, the director may retain the patient for a period not to exceed seventy-two hours from receipt of such notice. Before the expiration of such seventy-two hour period, the director shall either release the patient or apply to the supreme court or the county court in the county where the hospital is located for an order authorizing the involuntary retention of such patient. * * * If it be determined by the court that the patient is mentally ill and in need of retention for involuntary care and treatment in the hospital, the court shall forthwith issue an order authorizing the retention of such patient for care and treatment in the hospital * * * for a period not exceeding sixty days from the date of such order.” Section 9.33 of the Mental Hygiene Law sets forth the procedures for court authorization to retain an involuntary patient.
At the outset, it must be noted that the United States Supreme Court in Addington v Texas (441 US 418) held that "clear and convincing proof’ is required by the Fourteenth Amendment to the Constitution in a civil proceeding brought under State law to commit an individual involuntarily for an indefinite period to a State mental hospital. The meaning of the term "clear and convincing” has caused the courts problems. It has been said that this standard imposes a standard stricter than the mere preponderance of evidence rule and yet not as strict as the beyond a reasonable doubt standard applied in criminal cases (Richardson, Evidence [Prince, 10th ed], § 97, p 75; see, also, 9 Wigmore, Evidence, § 2498, subd [3]; Fisch, Evidence, § 1090). The function of a standard of proof, as that concept is embodied in the due process clause and in the realm of fact finding, is to "instruct the fact finder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.” (Matter of Winship, 397 US 358, 370, concurring opn of Harlan, J.) The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate *870 decision. The standard entitled "clear and convincing” has been described as an intermediate standard, somewhere between the standard of proof "beyond a reasonable doubt” and "preponderance of the evidence”. Of course, the State has a legitimate interest under its parens patriae powers in providing care to its citizens who are unable because of emotional disorders to care for themselves; it also has authority under its police powers to protect the community from the dangerous tendencies of some who are mentally deficient.
Here, however, the patient is a voluntary patient and the State requests detention for a period not to exceed 60 days, and the question becomes: "What standard of proof is to be applied?” Subdivision (b) of section 9.13 of the Mental Hygiene Law provides in pertinent part "The application [pertaining to voluntary patients] and proceedings in connection therewith shall be in the manner prescribed in this article for a court authorization to retain an involuntary patient”. Furthermore, the hospital’s own application states that it is brought pursuant to said section of the Mental Hygiene Law. Finally, the patient’s liberty is sought to be denied. Accordingly, for purposes of the standard of proof to be applied in such a situation, the court holds that the standard of proof required by Addington v Texas (supra), i.e., "clear and convincing” proof is the standard to be applied here.
The patient has been diagnosed as one afflicted with chronic schizophrenia accompanied by mental retardation. The State’s expert witness, Yvan Demosthene, M.D., testified that the patient had been a psychiatric patient since he was 17 years of age and during the course of the last 11 years, the patient has had at least seven admissions, all of which were, more or less the result of family pressure, and on these occasions he heard voices telling him to kill himself, and on two occasions, he did, in fact, attempt to take his life. Said witness did, however, state that the patient was in remission and is taking his medicine. When asked if the patient was suitable for discharge to some other place besides the hospital, the witness replied, "Since he is not psychotic, I would be willing to discharge him, if there was no mental retardation. Because of his mental retardation, I have to come up with a structured type of environment where I can more or less give him some type of protection.” Furthermore, when asked if the patient was discharged to society and he stopped taking his medica *871 tian (20 mgs. of Thiothixene, at the hour of sleep) would there be the chance that he would become suicidal again, the witness replied that there was that chance.
The court has observed the patient. He is a nice young man who has indicated that he would take his medicine every day and would voluntarily attend an out-patient clinic. He wants very much to live with his friend who resides in Long Beach. He does have some means of supporting himself and would like to work. He testified that he has no thoughts of committing suicide. Since his admission, there has been no evidence of a recent overt act, attempt or threat. However, it has been held that the lack of any such evidence of a recent overt act, attempt or threat is not fatal to a finding that an individual is in need of continued confinement (Matter of Scopes, 59 AD2d 203). At this point, I feel that the patient would not be a danger to society, but I am concerned that, based on his prior record, and based on the fact that the State’s expert witness has expressed the fear that without a structured environment and without medication, he may return to his suicidal tendencies, I decide, in the interests of justice, both to the patient and to society to adjourn this proceeding until February 8, 1980. On that date, the Department of Social Services is to appear and explain the efforts made to find a place for the patient and the results thereof.
A copy of this order is to be submitted on the Department of Social Services forthwith.