(December 5, 1985)

■ In the Matter of ANONYMOUS, Respondent, v KINGS COUNTY HOSPITAL CENTER, Appellant.—Appeal by Kings County Hospital Center from an order of the Supreme Court, Kings County (Miller, J.), dated November 14, 1985, which, after a hearing pursuant to Mental Hygiene Law § 9.31, directed that petitioner be released from appellant's care.

Order reversed, on the law and the facts, without costs or disbursements, and application for release denied.

The record in this case reveals that petitioner was involun-

tarily committed to appellant Kings County Hospital Center on October 8, 1985 pursuant to court order *(see,* Mental Hygiene Law § 9.43). The reason for his commitment was that he had engaged in assaultive behavior toward his mother, had threatened to kill her, and was experiencing delusions. He was diagnosed as suffering from atypical psychosis and chronic paranoid schizophrenia. On the day following his commitment, petitioner attempted to hang himself in a hospital bathroom and had to be resuscitated. He was subsequently certified by two physicians as being in need of involuntary care and treatment *(see,* Mental Hygiene Law § 9.27). A hearing on the issue of whether he should be released was held on November 14, 1985, and Special Term then ordered petitioner released. We now reverse.

In cases of this nature, a patient may be involuntarily retained in a treating facility only if his need for continued treatment is established by clear and convincing evidence *(see, Addington v Texas,* 441 US 418; *People v Escobar,* 61 NY2d 431, 439; *Matter of Buthy,* 90 AD2d 689; *Matter of Estes,* 75 AD2d 451).

The evidence presented at the hearing was sufficient to meet this burden and thus warrants petitioner's retention in the hospital. The medical evidence adduced during the proceeding consisted of the testimony of petitioner's doctor, who stated that he had seen petitioner on an almost daily basis during his five-week stay at the hospital. It was his professional judgment that while petitioner had exhibited some recent "qualified" improvement, he was still "actively suicidal" and "an accute *[sic]* risk", and required medication, the "structured environment" of the hospital, and group therapy sessions. He also stated that further observation of petitioner was necessary for the patient's continued safety. When questioned by the court, petitioner stated that he no longer wished to end his life, and that he would both comply with outpatient treatment and continue to take his medication if released. However, the record disclosed that when petitioner was previously committed to the same hospital, he was "non-compliant with aftercare" following his release. Moreover, petitioner informed the court that he believed the improvement in his condition was attributable to himself, and not to the medication which was being administered to him. He further related his vague plans to obtain a job and to take up residence in an emergency shelter in the event of his release.

Under these serious circumstances, Special Term erred in ordering petitioner's release. The medical evidence and peti-

tioner's extremely recent suicide attempt are squarely opposed to such a result *(see generally, Matter of Scopes,* 59 AD2d 203; *Matter of Rochman,* 104 Misc 2d 218; *Matter of Carter,* 102 Misc 2d 867). There is clear and convincing evidence indicating that petitioner presents a "substantial risk of physical harm to himself" (Mental Hygiene Law § 9.39 [a] [1]; *see generally, Schrempf v State of New York,* 66 NY2d 289; *Matter of Harry M.,* 96 AD2d 201).

Accordingly, we reverse and deny the application for release. Lazer, J. P., Bracken, Niehoff and Kooper, JJ., concur.